UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KRISTINA HANSEN,

                Plaintiff,

                                        DECISION AND ORDER

                                        Case No. 17-CV-6143-FPG-JWF

v.

WATKINS GLEN CENTRAL SCHOOL DISTRICT and
THOMAS J. PHILLIPS, Individually and as Superintendent
of the Watkins Glen Central School District,

                Defendants.

_____

## INTRODUCTION

Plaintiff Kristina Hansen brings this action under 42 U.S.C. § 1983 against the Watkins Glen Central School District ("District") and its Superintendent, Thomas Phillips.[1] She alleges that Defendants violated her rights by requiring her to obtain Phillips's permission before accessing District property in response to her attempt to enter the high school building without following security protocols. ECF No. 30.

Phillips and the District now move for summary judgment. ECF No. 32. Phillips argues that he is entitled to qualified immunity, and the District argues that it cannot be held liable for Phillips's actions because they were not taken pursuant to a municipal policy, practice, or custom. For the reasons stated below, Defendants' motion for summary judgment is GRANTED.

---

[1] Hansen sued Phillips in his individual and official capacities. A "§ 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." *Nielsen v. City of Rochester*, 58 F. Supp. 3d 268, 276 (W.D.N.Y. 2014); *see also J.L. el rel. J.P. v. N.Y.C. Dep't of Educ.*, 324 F. Supp. 3d 455, 469 (S.D.N.Y. 2018) (noting that "[f]or purposes of § 1983, school districts are considered to be local governments"). "Within the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant." *MacIntyre v. Moore*, 335 F. Supp. 3d 402, 416 (W.D.N.Y. 2018). Accordingly, the amended complaint is DISMISSED as to Phillips in his official capacity.

Kristina Hansen is a parent and long-time activist within the District who often attended Board of Education meetings. One such meeting was held on March 2, 2016. At that meeting, Superintendent Phillips announced that he would be giving a budget presentation at the high school during a "Superintendent's Day" on March 11, 2016. Phillips invited Board members to attend, but he did not intend this presentation to be open to the public. However, he did not clarify this at the March 2 Board meeting. Hansen planned to attend.

On the morning of March 11, Hansen arrived at the high school around 7:45am. As she was pulling in, she saw Phillips through a window, and he saw her. ECF Nos. 33-1 at 34; 33-4 at 90. She waited in her car for approximately ten minutes to see if any Board members were coming. ECF No. 33-1 at 34. She eventually saw two Board members arrive, so she exited her car and began walking towards the building. *Id.* at 34-37. But instead of walking directly towards the entrance and pressing the intercom button to request permission to be buzzed-in—as visitors are required to do—she waited behind a pillar for over a minute and a half until the two Board members with security passes approached the entrance. She then came out from behind the pillar and followed closely behind the Board members towards the doors because, in her words, "I knew I would have to ask permission to go in. I knew he would be allowed to just sail through." ECF No. 39 at 2.

Phillips saw Hansen approach from inside the building and became alarmed because he considered Hansen to be circumventing the school's security protocol. ECF No. 33-4 at 91. Before she could make it to the doors, Phillips came through them and told her to leave and that she could not attend the presentation because it was about confidential staffing issues and not open to the

[2] The facts are taken from the pleadings, summary judgment submissions, deposition testimony, the parties' statements of facts, and video surveillance footage.

2

public.  ECF No. 33-1 at 42-43.  Hansen refused and asked to speak to another district representative but was not allowed to do so.  After a ten to fifteen second interaction with Phillips, Hansen moved through the doors and entered a vestibule situated between the exterior doors and another set of interior doors.  Phillips instructed his office to notify the police and proceeded to his presentation.  Hansen waited in the vestibule for several minutes until two Watkins Glen Village police officers arrived and escorted her off the property without incident.

## I.     Phillips's March 11 Letter (The "First Restriction")

Later that day, Phillips consulted with a school attorney about sending a letter to Hansen in response to that morning's incident.  ECF No. 33-4 at 118-19.[3]  He sent the letter to Hansen by certified mail the same day.  It said:

> Due to your refusal to leave the district premises at the request of the superintendent which caused the police to intervene on Friday, March 11, 2016; the following procedure must be followed by you:
>
>> If you have a need to visit a school or a district office you must request permission from the Superintendent by stating the specifics of the need to come to the district, including time necessary to complete any business.
>>
>> Before coming to school, wait for the Superintendent to grant permission in writing.  Written permission must be presented at the time of admittance to the building.

ECF No. 36-10 at 2.

Hansen received the letter on March 14 and emailed a response to Board of Education President Kelly McCarthy and Phillips that same day.  ECF No. 36-10 at 5.  In it, she contested the legality of the First Restriction and asserted that the District's written Code of Conduct (ECF

---

[3] The level of attorney involvement in drafting the letter is not clear from the record.  Phillips testified that he spoke with an attorney—either John Lynch or James Gregory (both from the same law firm)—on the day he sent the letter, and the attorney "tweaked it, suggested additional verbiage."  ECF No. 33-4 at 117-19.  Phillips also indicated that the letter was based on a "form letter."  *Id.* at 117.  Phillips sent a draft of the letter to Lynch who responded on March 12 that the letter was fine but "could be made stronger" by indicating that Hansen's failure to comply with it could lead to police involvement, arrest, and prosecution.  ECF No. 26-10 at 3.  However, Phillips sent the letter to Hansen before receiving Lynch's March 12 email response.

No. 39-1 at 19) contained no provision authorizing Phillips to make a visitor get permission before accessing District property. She closed her email by indicating that she would not be adhering to the First Restriction.

## II. Phillips's March 14 Email (The "Second Restriction")

Approximately fifteen minutes after Hansen sent her email, Phillips emailed her back with the following message:

> Let me be extremely clear. This letter was written by the School attorney. You must follow the process as outlined in the letter you received "Certified" if you have a need to conduct business at any and all District facilities.
>
> I have included David Waite[4] in this email. By way of this email your letter "response" has been received and I am denying your coming to campus to hand deliver the letter.
>
> Failure to follow the process outlined in the letter will result in further legal consequences.

ECF No. 36-10 at 8. (The First Restriction and the Second Restriction will sometimes be collectively referred to as the "Permission Requirement").

## III. Hansen's Subsequent Attempts to Come to the District and Resulting Arrests

On March 17, Hansen sought to attend a parent/teacher conference at the school and Phillips granted her permission without incident. ECF No. 36-10 at 10.

After that, however, Hansen consulted with the New York State Committee on Open Government ("COG"), a unit housed in the Department of State that oversees and advises the government, public, and news media on Freedom of Information, Open Meetings, and Personal Privacy Protection Laws. Based on her communications with COG, on March 21, Hansen sent a letter to board president Kelly McCarthy and Officer David Waite informing them that she planned to attend a board meeting that night, but that she would not seek permission from Phillips because

---

[4] David Waite was a School Resource Officer and employee of the Watkins Glen Village Police Department.

she "know[s] the law" and "open meetings are open to everyone. You don't need to ask permission." ECF No. 32-4 ¶ 20. When Hansen arrived that night, Phillips told her to leave because she had not adhered to the Permission Requirement. Hansen refused, and Phillips turned the matter over to the Watkins Glen Police. They asked her to leave and advised her that she would be arrested if she did not. She again refused and was arrested and charged with criminal trespass.

On May 4, Hansen again came to the District premises and attended an outdoor tennis match without seeking Phillips's permission. The police again asked her to leave, she refused, and she was again arrested and charged with criminal trespass.

The Watkins Glen Village Court dismissed the charge stemming from the March 21 arrest for facial insufficiency. It dismissed the charge stemming from the May 4 arrest in a written Decision and Order. ECF No. 39-1 at 84-95 (Village Court Decision and Order). In it, the court acknowledged that Hansen "circumvented the security system of the school building when she entered into the lobby area by following persons who used their 'key card' to open the outside doors." *Id.* at 88. Nevertheless, the court found that the "banishment order" against Hansen was unlawful under New York Penal Law §§ 140.00[5] and 140.10[d]. *Id.* at 89-90. The court reasoned that, because a quorum of the Board was present at Phillips's March 11 budget presentation, under New York Education Law § 1708 and New York Public Officers Law § 103 (the "Open Meetings Law"), the March 11 presentation should have been open to the public and Hansen should have been permitted to attend. *Id.* at 87. The court held that the "banishment order" lacked a legitimate basis and was an "overreaction to a relatively benign infraction of school rules by a citizen who reasonably believed she had a right to attend the open session of a meeting attended by a quorum of the Board of Education . . . ." *Id.* at 90. The court further held that the

order would inhibit Hansen's ability to engage in constitutionally or statutorily protected rights, such as the right to lawfully enter and remain in public buildings.  *Id.* at 91-95.

## IV.     This Action

Hansen then sued Phillips and the District for imposing the Permission Requirement against her.  In her first cause of action, she alleges that Phillips violated her "rights under the District's policies and procedures, established pursuant to State Law;" her constitutional rights to free speech, peaceful assembly, and association; and her right to due process.[5]  ECF No. 30 at 10. In her second cause of action, Hansen alleges that Phillips retaliated against her for complaining about the First Restriction by increasing its scope from any "school or district office" as stated in the First Restriction to "any and all District facilities" as stated in the Second Restriction.  *Id*. at 11.  In her third cause of action, Hansen alleges a *Monell*[6] claim against the District.  *Id*. at 12.

Phillips and the District now move for summary judgment on all of Hansen's remaining claims.  ECF No. 32, 32-5.

## DISCUSSION

## I.     Hansen's Claims for Violations of State Law Are Not Cognizable Under § 1983

Within her first cause of action, Hansen alleges that Phillips violated her rights under state law.  Specifically, she alleges that Phillips violated the District's Visitors' Policy, which is included in the written Code of Conduct established by the Board of Education pursuant to New

---

[5] Hansen also alleges in her first cause of action that Defendants violated her right to be free from search and seizure and to only be arrested with probable cause, but she has not addressed these claims in her submissions in opposition to summary judgment, and the Court therefore deems them to be abandoned. *See Caruso v. Bon Secours Charity Health Systems Inc*., 2016 WL 8711396, *14, n. 13 (S.D.N.Y. 2016), *aff'd*, 703 Fed. App'x 31 (2d Cir. 2017) ("[a]part from a conclusory assertion . . . plaintiff did not respond to defendants' arguments that any of these claims should be dismissed. Therefore, plaintiff has abandoned them and they are dismissed"); *Gaston v. City of N.Y.*, 851 F. Supp. 2d 780, 796 (S.D.N.Y. 2012) (deeming claims abandoned when plaintiff "failed to respond or even mention these claims in his opposition brief to defendants' summary judgment motion").  Hansen's amended complaint also asserted a fourth, fifth, six, and seventh cause of action, but Hansen has withdrawn those claims.  ECF No. 40 at 7.

[6] *Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978).

York Education Law § 2801. ECF No. 39-1 at 19. The Visitors' Policy states that "[t]he building principal or his or her designee is responsible for all persons in the building and on the grounds." ECF No. 39-1 at 58-59. Hansen claims that as the superintendent—not a building principal—Phillips lacked the authority to enforce the Visitors' Policy against her. ECF No. 30 at 10; ECF No. 40 at 9.

Hansen further alleges that Phillips violated her rights under New York Public Officers Law § 103, the Open Meetings Law, which provides that "[e]very meeting of a public body shall be open to the general public." ECF No. 40 at 11, 14. She emphasizes that the criminal trespass charges against her were dismissed based on this statute.

These allegations are not cognizable under § 1983 because they do not state violations of federal statutory or constitutional rights. "[V]iolation[s] of state law [are] not cognizable under § 1983," nor do they "deprive a state official of qualified immunity from damages. Absent a violation of clearly established *constitutional or federal statutory rights* of which a reasonable person would have known, a school official cannot be held accountable for damages under § 1983." *Pollnow v. Glennon,* 757 F.2d 496, 501 (2d Cir. 1985) (internal citations and quotation marks omitted, emphasis in original); *see also Koubek v. Cty. of Nassau*, No. 10-CV-4488 SJF WDW, 2012 WL 1107734, at *6 (E.D.N.Y. Mar. 28, 2012) (holding that under § 1983, a "[p]laintiff cannot simply rest his First Amendment claim upon his argument that defendants violated New York's Open Meetings Law: he must also plead a constitutional claim").

Accordingly, the Court grants summary judgment in favor of Phillips to the extent that Hansen's first cause of action seeks § 1983 relief based on violations of state law.

## II. Phillips is Entitled to Qualified Immunity Against Hansen's Free Speech, Due Process, and Retaliation Claims (First and Second Causes of Action)

### A. Qualified Immunity Standard on Summary Judgment

Qualified immunity protects public officials when they make reasonable, even if mistaken, decisions. *Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017) (citing *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)); *see also Malley v. Briggs*, 475 U.S. 335, 343 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). To decide whether to grant a public official's motion for summary judgment based on qualified immunity, courts ask two questions: (1) whether the facts, viewed in the plaintiff's favor, show that the official's conduct violated a constitutional right; and (2) if so, whether the right at issue was clearly established at the time of the alleged violation. *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011). The court need not take these questions in sequence and "may determine that any constitutional violation was not clearly established" without deciding "whether a constitutional violation did indeed occur." *Brown v. City of N.Y.,* No. 13-CV-1018 (KBF), 2016 WL 1611502, at *4 (S.D.N.Y. Apr. 20, 2016), *aff'd*, 862 F.3d 182 (2d Cir. 2017).

"A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he or she is doing violates that right." *Jones v. Bay Shore Union Free Sch. Dist.*, 170 F. Supp. 3d 420, 437 (E.D.N.Y. 2016) (*Jones I*) (quoting *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 278 (2d Cir. 1999)), *aff'd*, 666 F. App'x 92 (2d Cir. 2016) (summary order). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Doninger*, 642 F. 3d at 345 (quoting *Zieper v. Metzinger*, 474 F.3d 60, 68 (2d Cir. 2007)). "[A] determination of whether the right at issue was clearly established must be undertaken in light of the specific context

of the case, not as a broad general proposition." *Id.* (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001), *abrogated on other grounds by Pearson v. Callahan,* 555 U.S. 223 (2009)). Courts look to "whether (1) [the right] was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *Id.*

### B. Hansen's First Amendment Free Speech Claim (First Cause of Action)

In her first cause of action, Hansen alleges that Phillips's Permission Requirement violated her First Amendment right to attend public Board meetings and sporting events at the school. The crux of her complaint is that the Permission Requirement was an unreasonable reaction to her "peaceful, reasonable conduct." ECF No. 40 at 10.

Hansen correctly identifies a First Amendment right to attend public Board meetings and sporting events. Although parents do not have a "general and unlimited First Amendment right of access to school property," *Johnson*, 859 F.3d at 175, when a school opens itself up to the public for Board meetings or sporting events, it becomes a limited public forum. *See id.* (identifying sporting events as a limited public forum); *Jones I*, 170 F. Supp. 3d at 437 (identifying school board meetings as a limited public forum).

In a limited public forum, content-based restrictions on speech or speakers within the designated category for which the forum was opened are subject to strict scrutiny, whereas restrictions on speech or speakers outside the designated category need only be reasonable and viewpoint neutral. *Hotel Emps. & Rest Emps. Union, Local 100 v. City of N.Y. Dep't of Parks & Rec.*, 311 F.3d 534, 545, 553 (2d Cir. 2002).

Additionally, in a limited public forum, "the government may impose content-neutral time, place, and manner restrictions on speech within the designated category for which the forum has been opened so long as those restrictions are 'narrowly tailored to serve a significant government

interest and leave open ample alternative channels of communications.'" *Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536, 548 (D. Vt. 2014) (quoting *Make the Rd. by Walking, Inc. v. Turner*, 378 F.3d 133, 142 (2d Cir. 2004)). However, where a content-neutral restriction targets an individual rather than the general public, some courts analyze it as a prior restraint which must "burden no more speech than necessary to serve a significant government interest" to survive. *Id.* (quoting *Madsen v. Women's Health Ctr.,* 512 U.S. 753, 764 (1994)); *but see Johnson*, 859 F.3d 156 (applying the reasonable and viewpoint-neutral standard to restrictions on an individual's access to a limited public forum without regard to whether the speech falls inside or outside the designated purpose of the forum).

Here, Hansen does not argue that Phillips imposed the Permission Requirement based on her viewpoint or even the content of her speech. It was a content-neutral response to her attempt to circumvent the school's security protocol. Rather, Hansen's theory is that, regardless of her suspicious attempt to enter the school on March 11, she acted reasonably, peacefully, and calmly at all times, so Phillips acted unreasonably by imposing the Permission Requirement against her.

Without deciding whether Phillips violated Hansen's First Amendment rights, the Court concludes that he is entitled to qualified immunity. The right that Hansen asserts—the right to access a limited public forum without having to obtain permission, despite having violated a security protocol—has not been defined with reasonable clarity, nor has the Supreme Court or the Second Circuit confirmed the existence of such a right.

Recent guidance from the Second Circuit would not make it apparent to a superintendent in Phillips's position that his Permission Requirement violated Hansen's First Amendment rights. For example, in *Jones v. Bay Shore Union Free Sch. Dist*., 666 F. App'x 92 (2d Cir. 2016) (summary order) (*Jones II*), a new superintendent enforced a longstanding restriction prohibiting

the plaintiff, a parent and former school softball coach, from appearing on district property without the superintendent's permission because the plaintiff had been previously been accused of sexual misconduct with students. *Id.* 93-94. The plaintiff argued that the requirement violated his due process rights because he had a protected interest in attending school board meetings. *Id.* at 94. The Second Circuit held that

> while there may be a protected interest in attending school board meetings, the school district does not categorically bar Jones from attending; it simply requires that he provide advance notice before doing so. Especially considering the school district's interest in protecting students from a person who was discharged from teaching for suspected sexual misconduct with minors, any interest Jones may have in attending board meetings *without providing advance notice* is de minimis and insufficient to sustain a due process claim.

*Id.* (emphasis in original).

Similarly, here, as Hansen admits, this "case involves restrictions, not an outright ban." ECF No. 40 at 23. *Jones II* could be read to suggest that a Permission Requirement like the one Phillips imposed passes constitutional muster, but an outright ban would not.

Hansen argues that *Jones II* is distinguishable because the plaintiff there presented a greater safety concern than she did, so the restriction against him was justified. That may be so, but nothing in *Jones II* makes it apparent that Hansen's conduct does not also justify a restriction. *See Doninger*, 642 F. 3d at 345 (holding that qualified immunity protects official conduct unless pre-existing law makes the unlawfulness of the conduct apparent); *Jones I*, 170 F. Supp. 3d at 437 (qualified immunity applies unless "the contours of the right are sufficiently clear that a reasonable official would understand that what he or she is doing violates that right").

*Johnson*, another recent Second Circuit case, also does not make it apparent to Phillips that his conduct violated Hansen's First Amendment rights. In *Johnson*, a principal banned a father from school events, including basketball games, after the father vehemently accused the principal of bullying his daughter and then lying about it. 859 F.3d at 161-63. The Second Circuit affirmed

the denial of qualified immunity to the principal, holding that "the right not to be excluded, based on viewpoint differences or because of possible annoyance, from sports events to which the public was invited was clearly established." *Id.* at 176.

In *Johnson*, there was an issue of fact as to whether the principal banned the father from the basketball games due to safety concerns or due to a desire "to punish him for having expressed his views that [the principal] had engaged in bullying and falsification." *Id.* Here, by contrast, Hansen does not argue that Phillips restricted her based on any of her viewpoints. Moreover, *Johnson* involved a categorical ban, not a mere Permission Requirement. *Johnson* thus involved different circumstances—possible viewpoint discrimination and a more severe restriction—that prevent it from clearly establishing Hansen's rights under the facts of this case.

A third Second Circuit case, *Huminski v. Corsones*, 396 F.3d 53 (2d Cir. 2004), *as amended on reh'g* (Jan. 18, 2005), is also distinguishable from this case. In *Huminski*, court personnel issued several no trespass notices that excluded a protestor from court facilities and grounds. *Id.* at 58. The Second Circuit held that the ban was unconstitutional and denied qualified immunity because the ban singled out the plaintiff and essentially created a "First Amendment-free zone" for him alone. *Id.* at 92-93. Here, by contrast, Phillips did not issue a categorical ban.

As the foregoing discussion indicates, there were no "cases of controlling authority" in the Second Circuit at time in question that clearly established the right Hansen asserts. Nor is there a "consensus of cases of persuasive authority such that a reasonable [superintendent] could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999). To the contrary, recent cases from other circuit courts support granting qualified immunity to Phillips.

For instance, in *Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136 (3d Cir. 2017) (*Barna II*), after the plaintiff exhibited disruptive and threatening behavior at several

school board meetings, the board permanently banned him from attending them. *Id.* at 140. As an alternative, the board offered to allow the plaintiff to submit "reasonable and responsible" written requests which the board promised to timely answer. *Id.*

The district court found that, although the ban was content-neutral and justified in light of the plaintiff's disruptive conduct, it was nevertheless unconstitutional because it was not narrowly tailored and did not leave open ample alternative channels of communication. *Barna v. Bd. of Sch. Directors of the Panther Valley Sch. Dist.*, 143 F. Supp. 3d 205, 216 (M.D. Pa. 2015) (*Barna I*). The district court rejected the board's letter-writing offer as an inadequate alternative channel of communication. *Id.* at 219, 223 (citing *Cyr*, 60 F. Supp. 3d 536 (rejecting telephonic participation in school board meetings as an inadequate alterative to physical presence)).

But the district court granted qualified immunity to the board members, finding that there were no controlling cases in the Third Circuit "which clearly established a rule that a permanent ban on attendance in speaking at school board meetings in response to disruptive and arguably threatening behavior at such meetings was clearly unlawful." *Barna I*, 143 F. Supp. 3d at 225. The Third Circuit affirmed the grant of qualified immunity and further found that the board's ban left open alternative channels for expressive activity, citing the letter-writing option. *Barna II*, 877 F. 3d at 144.

Additionally, in *Lovern v. Edwards*, 190 F.3d 648 (4th Cir. 1999), the Fourth Circuit upheld a ban prohibiting a disruptive and threatening parent from entering school property. While *Lovern* dealt with the general right to access school grounds and did not discuss the specific right to attend school board meetings or other school events functioning as limited public forums, the Third Circuit in *Barna II* concluded that, for qualified immunity purposes, the rights at issue were "sufficiently similar" such that

the *Lovern* court's guidance on the scope of the "right to communicate" on school property could plausibly suggest to a reasonable official that the permanent ban at issue here would pass constitutional muster. Even assuming there is a protected interest in participating in school board meetings despite engaging in a pattern of threatening and disruptive behavior, we cannot fault the individual Board officials for having failed to recognize that right as clearly established, particularly in light of the *Lovern* decision and the absence of contrary authority from the Supreme Court or our Court.

*Barna II*, 877 F. 3d at 144; *see also Jackson v. McCurry*, 762 F. App'x 919, 928 (11th Cir. 2019) (unpublished op.) (granting qualified immunity to a superintendent who banned a parent from attending a school board meeting after he threatened litigation).

Thus, the cases that have considered similar issues do not make it apparent that Phillips's Permission Requirement was unlawful. Unlike the cases involving outright bans, the Permission Requirement here did not exclude Hansen from the board meetings or sporting events, it only required that she followed security protocols to attend. ECF No. 32-2 at 4. There is no indication in the record that Phillips would have denied Hansen permission when she requested it. Indeed, the one time that she sought to attend a parent/teacher conference, Phillips gave her permission. ECF No. 36-10 at 10.

Accordingly, the Court concludes that reasonable superintendents could disagree about whether Phillips's restriction violated Hansen's First Amendment rights. *See Jones I*, 170 F. Supp. 3d at 437; *Doninger*, 642 F.3d 353 (holding that if school officials "of reasonable competence could disagree on the legality of the action at issue in its particular factual context, then the defendant is entitled to qualified immunity, [e]ven if the right at issue was clearly established in certain respects"). The Court finds that Phillips is entitled to qualified immunity on Hansen's first cause of action for violation of her First Amendment free speech rights.

### C. Hansen's Fourteenth Amendment Due Process Claim (First Cause of Action)

Hansen also alleges in her first cause of action that Phillips's restrictions violated her Fourteenth Amendment right to due process. "A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Cyr*, 60 F. Supp. 3d at 550 (quoting *Bryant v. N.Y. Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012)). Relying on *Cyr*, Hansen argues that Phillips violated her First Amendment liberty interest in attending the school board meetings and sporting events without providing her with a post-deprivation remedy.

In *Cyr*, the court found that a school district's notices of trespass against a parent violated his due process rights because there was no protocol in place governing when the district officials could issue notices of trespass, the notices failed to set forth any process for contesting them, and the plaintiff had no meaningful opportunity to contest them. *Id.* Hansen argues that Phillips's restrictions suffered from the same defects here.

However, in *Jones II*, as noted above, the Second Circuit held that any interest in attending school board meetings *without providing advance notice* was de minimis and insufficient to sustain a due process claim. 666. F. App'x at 95. The Second Circuit also pointed out that a post-deprivation remedy did exist: the plaintiff could have filed an Article 78 proceeding to challenge the restriction. *Id.* at 95; *see also Roth v. Farmingdale Pub. Sch. Dist*., No. 14CV6668JFBARL, 2017 WL 395211, at *19 (E.D.N.Y. Jan. 30, 2017) (explaining that plaintiff could have brought an Article 78 proceeding to challenge a ban from school district property). Under *Jones II*, the Court finds that a reasonable superintendent would not have understood that the Permission

Requirement violated Hansen's due process rights, and thus grants qualified immunity to Phillips on Hansen's second cause of action.[7]

### D. Hansen's First Amendment Retaliation Claim (Second Cause of Action)

In her second cause of action, Hansen alleges that, fifteen minutes after Phillips received her March 14 email challenging the First Restriction and announcing her intent not to follow it, Phillips retaliated against her by emailing her the Second Restriction, in which he broadened the scope of the Permission Requirement from "schools or district offices" to "any and all District facilities."

To establish a First Amendment retaliation claim, a plaintiff must prove "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *A.F. v. Kings Park Cent. Sch. Dist.,* 341 F. Supp. 3d 188, 200 (E.D.N.Y. 2018) (quoting *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003)).

Phillips argues that he did not take an adverse action against Hansen and thus did not retaliate against her. In his deposition, he testified that he always understood the First Restriction to apply to all District facilities, including exterior areas, because "that's the school." ECF No. 32-4 at 6 ¶ 18. Thus, Phillips understood the Second Restriction to merely reinforce, rather than broaden, the First Restriction.

---

[7] Hansen also appears to assert a protected Fourteenth Amendment liberty interest in attending school board meetings under New York Public Officers Law § 103(a), New York's Open Meetings law. ECF No. 40 at 22. However, in *Jones I*, the district court held that a directive requiring the plaintiff to notify the superintendent when he intended to appear on district property did not implicate the open meetings law because "[t]he statute's purpose is to direct boards to deliberate in public . . . . There is nothing in the statute limiting a board's authority to restrict access to an individual for safety reasons, while still keeping the meeting open to the general public." *Id.* at 435. The plaintiff did not appeal the district court's decision regarding New York's open meeting law. *Jones II*, 666 F. App'x 95, n.2. Even if it found that Hansen had a protected Fourteenth Amendment liberty interest in attending the school board meetings arising from state open meetings laws, the Court would still find Phillips entitled to qualified immunity under *Jones II*.

In response, Hansen attempts to generate an inference of retaliatory motive and create an issue of fact by baldly declaring that she "disputes that Phillips ever understood the First Restriction (March 11) to match the Second Restriction (March 14)." ECF No. 39 at 5 ¶ 18.

"However, a party seeking to avoid summary judgment cannot baldly contend that a fact is disputed without producing evidence to support his contention. 'Speculation, conclusory allegations and mere denials are insufficient to raise genuine issues of fact.'" *Philippeaux v. Fashion Inst. of Tech.,* No. 93 CIV 4438 (SAS), 1996 WL 164462, at *7 (S.D.N.Y. Apr. 9, 1996), *aff'd*, 104 F.3d 356 (2d Cir. 1996) (quoting *Hauser v. Western Group Nurseries, Inc.*, 767 F. Supp. 475, 483-84 (S.D.N.Y. 1991)) (granting summary judgment where plaintiff disputed veracity of defendant's motives for taking adverse action yet proffered no evidence to support that contention). "These maxims are true even when discriminatory intent is at issue: 'The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion.'" *Id.* (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. denied*, 474 U.S. 829 (1985)).

The few facts that Hansen cites in support of her retaliation claim do not lead to an inference of retaliatory motive on Phillips's part.

First, Hansen cites the short fifteen minute time span between her March 14 email and Phillips's response as evidence of retaliatory motive. While temporal proximity is "one of several factors to consider in determining whether a causal connection exists" between protected speech and an adverse action, "the relevance of temporal proximity in a particular First Amendment retaliation case turns on its unique facts and circumstances." *Geagan v. City Univ. of N.Y.*, No. 09 CIV. 3271 LAK FM, 2011 WL 3370395, at *14 (S.D.N.Y. July 14, 2011). Here, Hansen's March 14 email to Phillips not only challenged the legality of the First Restriction, it also explicitly

notified Phillips that Hansen had no intention of complying with it.  ECF No. 36-10 at 7.  The fact that he promptly responded and advised her that she was required to adhere to the First Restriction does not lead to an inference of a retaliatory motive.  His email did not address her challenge to the legality of the restriction or otherwise indicate that Phillips was responding to anything but Hansen's announcement of her intent not to obey the First Restriction.  *See* ECF No. 32-2 at 4-5; *see also Tuccio Dev., Inc. v. Town of Brookfield, No*. 08CV1016 (MRK), 2010 WL 2794192, at *18 (D. Conn. July 14, 2010), *aff'd sub nom. Tuccio Dev., Inc. v.* Miller, 423 F. App'x 26 (2d Cir. 2011) (finding that no reasonable jury could infer from temporal proximity alone that adverse action was result of improper motive).

Next, Hansen argues that Phillips's Second Restriction email opened with a false statement: that the First Restriction was "written by the School attorney," when in fact, it had been written by Phillips and later reviewed by the attorney.  ECF No. 40 at 17.  But Phillips acknowledged this in his deposition and explained: "I could have been more precise that it was reviewed by the school attorney but – Okay. Sorry."  ECF No. 33-4 at 133.  This does not reasonably lead to an inference that Phillips broadened the scope of the Permission Requirement against Hansen in retaliation, but rather suggests that Phillips was simply imprecise in drafting the Second Restriction email. Indeed, even in the First Restriction letter Phillips was imprecise in articulating its scope: the First Restriction letter simultaneously referred to the "district premises," the "school or a district office," the "district," and "the building."  ECF No. 36-10 at 2.  And the Second Restriction email referred to "any and all District facilities" and "campus."  The fact that Phillips failed to use the exact same terms to articulate the scope of the Second Restriction, when he also failed to do so within the First and Second Restrictions themselves, does not indicate adverse action or create an inference of a retaliatory motive.

Accordingly, the Court grants summary judgment to Phillips on Hansen's second cause of action for retaliation. *See, e.g.*, *Roy v. Stanley*, No. CIV. 02-CV-555-JD, 2005 WL 2290276, at *5 (D.N.H. Sept. 20, 2005) (holding that, where defendant's decision to take adverse action was based on a mistake, there was no causal link between the adverse action and plaintiff's protected conduct, and granting qualified immunity to defendant); *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (holding that public officials are "entitled to qualified immunity [when] their decision was reasonable, even if mistaken").

## III.    The District is Entitled to Summary Judgment on Hansen's *Monell* Claim (Third Cause of Action)

A municipality, such as a school district, cannot be held liable under § 1983 solely on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "In order to hold the municipality liable for the acts of its employees, [a] plaintiff must show that the municipality has a policy or custom which causes the deprivation of his civil rights." *Dauber v. Bd. of Educ. of City of N.Y.,* No. 99 CIV. 3931 (LMM), 2001 WL 1246581, at *4 (S.D.N.Y. Oct. 18, 2001). "In order to succeed, [a] plaintiff must demonstrate 'a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation,' and must show that the municipal policy was the 'moving force [behind] the constitutional violation.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). A school district can be liable under § 1983 based on any of three theories:

> (1) that a district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a "final policymaker."

*Hurdle v. Bd. of Educ.*, 113 F. App'x 423, 425-26 (2d Cir. 2004) (summary order)

Here, Hansen argues that the District is liable under the second theory. She maintains that Phillips acted pursuant to a longstanding District practice or custom of allowing Phillips to enforce the Visitors' Policy, even though the Visitors' Policy gives that authority to principals.

Hansen fails to establish a *Monell* claim. The practice or custom she asserts did not directly cause the constitutional violation she alleges. The practice relates only to *who* may enforce the Visitors' Policy, not *how* that policy is enforced nor the terms of the policy itself.

Moreover, regardless of whether Phillips was acting pursuant to or in derogation of the Visitors' Policy, there is no indication that he was acting with anything other than his discretion. "The Second Circuit has 'explicitly rejected the view that mere exercise of discretion [is] sufficient to establish municipal liability.'" *T.E. v. Pine Bush Cent. Sch. Dist.,* 58 F. Supp. 3d 332, 376 (S.D.N.Y. 2014) (quoting *Anthony v. City of N.Y.*, 339 F.3d 129, 140 (2d Cir. 2003)) (finding that superintendent and principals acted with discretion, and not as "final policymakers," where New York law provides that the board of education—not the superintendent or principals—has the power to establish relevant rules and regulations, plaintiff pointed to no formal delegation of policymaking authority from board to administrators, and board maintained policymaking and oversight authority).

Here, Hansen does not allege that Phillips was acting as a "final policymaker;" she specifically alleges that under New York Education Laws § 1711(2), a superintendent may only "enforce all rules and regulations relating to the management of the schools . . . under the direction of the Board of Education," ECF No. 40 at 8, and that the Visitors' Policy is included in the Board of Education's Policy Manual. There is no indication in the record that the board abdicated its policymaking authority regarding visitors to the superintendent or that the board could not overturn Phillips's discretionary decisions regarding visitors. *See Watson v. Grady*, No. 09-CV-3055 KMK,

2010 WL 3835047, at *11 (S.D.N.Y. Sept. 30, 2010) ("[I]t is not enough for Plaintiff to allege that the municipal actors had 'been granted discretion in the performance of [their] duties;' rather, the Court looks to state law to determine whether the actors had final policymaking authority."); *see also St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988) (plurality opinion) ("If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from respondeat superior liability.").

Accordingly, the Court grants summary judgment to the District on Hansen's *Monell* claim.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (ECF No. 32) is GRANTED as to Hansen's first, second, and third causes of action. The Clerk of Court is directed to enter judgment in favor of Defendants and close this case.

IT IS SO ORDERED.

Dated: July 15, 2019
      Rochester, New York

                                      _____
                                      HON. FRANK P. GERACI, JR.
                                      Chief Judge
                                      United States District Court